FILED
U. S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

OCT 0 4 2016

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

In the United States District Court
Eastern District of Arkansas
Western Division

Deanne Scroggin Hooker                                    Plaintiff

v.                        4:16W 708-SWW

LVNV Funding, LLC; and
Gamache & Myers, P.C.                                     Defendants

## Complaint

1.    This is an action for damages brought by Deanne Scroggin

Hooker, an individual consumer, for Defendants LVNV Funding, LLC's

and Gamache & Myers, P.C.'s violations of the Fair Debt Collection

Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq.*, the Arkansas Fair Debt

Collection Practices Act (AFDCPA); Ark. Code Ann. § 17-24-501, *et seq.*, the

Arkansas Deceptive Trade Practices Act (ADTPA), Ark. Code Ann. § 4-88-

101, *et seq.*, all of which prohibit debt collectors from engaging in abusive,

deceptive, and unfair practices. Deanne Scroggin Hooker also brings

common law claims for the abuse of process and malicious prosecution by

Defendants for using state courts to collect a consumer debt she did not

owe.

### Parties

2.    Plaintiff Deanne Scroggin Hooker is a citizen of Pulaski County,

Arkansas, and was so at the time of the events establishing this Complaint.

Deanne Scroggin Hooker is a "consumer" as defined by 15 U.S.C. § 1692a(3)

This case assigned to District Judge Wright
and to Magistrate Judge Harris

and Ark. Code Ann. § 17-24-502(2), and a "person" as defined by Ark. Code Ann. § 4-88-102(5).

3.      LVNV Funding, LLC, is a foreign limited liability company organized under Delaware law with its principal place of business located at 625 Pilot Road, Suite 3, Las Vegas, NV 89119. LVNV Funding, LLC's registered agent is CSC Services of Nevada, Inc., 2215-B Renaissance Dr., Las Vegas, Nevada 89119-6727. LVNV Funding, LLC, regularly attempts to collect debts alleged due from another and is a "debt collector" as defined by 15 U.S.C. § 1692a(6) and Ark. Code Ann. § 17-24-502(5)(A) and a "person" as defined by Ark. Code Ann. § 4-88-102(5).

4.      Gamache & Myers, P.C., is a professional corporation organized under Missouri law with its principal place of business at 1000 Camera Ave., Ste. A, Crestwood, MO 63126. Gamache & Myers, P.C.'s registered agent is Edward Myers, 1111 Woods Mill Road, Suite 180, Town & Country, Missouri 63017. Gamache & Myers, P.C., regularly attempts to collect debts alleged due from another and is a "debt collector" as defined by 15 U.S.C. § 1692a(6) and Ark. Code Ann. § 17-24-502(5)(A). LVNV Funding, LLC is a licensed debt collector with the Arkansas State Board of Collection Agencies.

## Jurisdiction and Venue

5.      This Court has original jurisdiction over this civil action under 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d), because Deanne Scroggin Hooker's

claims for violations of the FDCPA arise under the law of the United States. This Court has supplemental jurisdiction over Deanne Scroggin Hooker's remaining claims under 28 U.S.C. § 1367 because those claims are so related to her claims for violations of the FDCPA they form part of the same case or controversy under Article III of the United States Constitution.

6.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions establishing the claim occurred in this judicial district and division.

### Factual Background

7.     On November 16, 2015, Gamache & Myers, P.C. (Gamache & Myers) filed a civil action for LVNV Funding, LLC (LVNV Funding) against Deanne Scroggin Hooker (under the name Deanne Hooker) in the Circuit Court of Pulaski County, Arkansas.[1] Donald C. Tippet, an attorney for Gamache & Myers, signed the Complaint, which alleged that:

- LVNV Funding was the holder of a valid assignment of an account previously owned by Credit One Bank N.A. with an account number ending in **** **** **** 3327;

- Deanne Hooker and Credit One Bank N.A. had previous financial transactions;

---

[1] *See* attached Exhibit 1 (Complaint, Affidavit, and other documents that were attached to the Complaint).

- Deanne Hooker used the credit and promised to pay the amount due;

- Deanne Hooker agreed the balance on the account was $589.99;

- Deanne Hooker failed to keep her promise to pay the balance; and

- LVNV Funding was entitled to recover $589.99 from Deanne Hooker, with postjudgment interest and costs LVNV Funding expended in the litigation.

8.     Upon information and belief, the debt LVNV Funding sued Deanne Scroggin Hooker on is a financial obligation for personal, family, or household purposes, and is a "debt" as defined by 15 U.S.C. § 1692a(5) and Ark. Code Ann. § 17-24-502(4).

9.     Attached to the Complaint was an Affidavit signed by Matt Summers, an "Authorized Representative" of LVNV Funding. The Affidavit swore that the following was true:

- LVNV Funding acquired the credit account of Deanne Hooker, account number **** **** **** 3327 from Credit One Bank, N.A. or its successor in-interest;

- LVNV Funding's business records for the credit account reflected that the balance due and owing to LVNV Funding by Deanne Hooker was $589.99.

10. In approximately November 2015, LVNV Funding reported to credit reporting agencies that Deanne Scroggin Hooker's owed it $590 on a debt buyer account.

11. On or about December 28, 2015, LVNV Funding served Deanne Scroggin Hooker with the Complaint and Summons.

12. On January 25, 2016, Deanne Scroggin Hooker filed her Answer[1] to the Complaint. Attached to the Answer was her Affidavit, which denied she had ever

- applied for a Credit One Bank N.A. account;

- had financial transactions with Credit One Bank N.A.;

- used any credit from Credit One Bank N.A.;

- promised to pay Credit One Bank N.A. any amount of money; and

- agreed to any balance with Credit One Bank N.A.[2]

13. Deanne Scroggin Hooker's Affidavit also stated she did not know how LVNV Funding obtained the account it sued her over and that she did not owe LVNV Funding $589.99.[3]

---

[1] *See* attached Exhibit 2.

[2] *Id.*

[3] *Id.*

14.   Deanne Hooker also served requests for production and interrogatories, requesting documents and information regarding the account at issue in its Complaint, including the application, receipts of charges, and the transaction history.

15.   On March 29, 2016, without responding or objecting to Deanne Hooker's request for production of documents, LVNV Funding moved to dismiss without prejudice.

16.   On March 30, 2016, the Circuit Court of Pulaski County entered an Order granting LVNV Funding's motion to dismiss without prejudice.

17.   Defendants' and their employees' and agents' conduct in suing to attempt to collect a debt from Deanne Scroggin Hooker she did not owe on a credit card she did not apply for, receive, or use, was the direct and proximate cause of actual damages, including emotional distress, and has caused unnecessary strain on her.

### Respondeat Superior Liability

18.   The acts and omissions of Matt Summers and Donald C. Tippett, and other employees and agents of each Defendant who filed a lawsuit against Deanne Scroggin Hooker to attempt to collect a debt were

---

*See* attached Exhibit 3.

*See* attached Exhibit 4.

*See* attached Exhibit 5.

*See* attached Exhibit 6.

committed within the time and space limits of their agency relationship with their principals LVNV Funding and Gamache & Myers, respectively.

19.    The acts and omissions of Matt Summers and Donald C. Tippett, and other employees and agents, were incidental to, or of the same general nature as, the responsibilities these employees and agents could perform by LVNV Funding and Gamache & Myers, respectively.

20.    By committing these acts and omissions against Deanne Scroggin Hooker, Matt Summers and Donald C. Tippett, and other employees and agents were motivated to benefit their principals, LVNV Funding and Gamache & Myers, respectively.

21.    LVNV Funding and Gamache & Myers are therefore liable to Deanne Scroggin Hooker under the doctrine of respondeat superior for the intentional and negligent acts, errors, and omissions that violated federal and state law by their collection employees and agents, including violations of the FDCPA, the AFDCPA, the ADTPA, and Arkansas common law, in their attempts to collect a consumer debt from Deanne Scroggin Hooker.

**Standing**

22.    Deanne Scroggin Hooker has standing under Article III of the United States Constitution because she has suffered an injury in fact, the injury in fact is traceable to the challenged conduct of Defendants described herein, and her injury in fact is likely to be redressed by a favorable judicial decision in this Court. Deanne Scroggin Hooker's injury in fact is both

particular and concrete because she suffered an invasion of a legally protected interest that is concrete, particularized and actual or imminent. Many provisions of the FDCPA, the AFDCPA, and Arkansas's common law recognize a consumer's right to privacy and provides redress for violations of those privacy rights, including the right to be left alone from debt collection efforts on debts the consumer does not owe. The ADTPA recognizes the risk of harm to persons who are subject to unconscionable, false, or deceptive acts or practices in business, commerce, or trade.

## Causes of Action

### Count I–Violations of the FDCPA, 15 U.S.C. § 1692, et seq.

23.    Deanne Scroggin Hooker re-alleges and incorporates the foregoing paragraphs, as if set forth word for word.

24.    Defendants violated the FDCPA. Defendants' violations include, but are not limited to, the following provisions:

   a.    Defendants violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass harasses, oppress or abuse any person in connection with the collection of a debt;

   b.    Defendants violated 15 U.S.C. § 1692e by using false, deceptive, or misleading representations or means in connection with the collection of a debt;

c.    Defendants violated 15 U.S.C. § 1692e(2) by making false, deceptive, or misleading representations about the character, amount, or legal status of the alleged debt;

d.    Defendants violated 15 U.S.C. § 1692e(8) by communicating false credit information, including the failure to communicate that the debt was disputed;

e.    Defendants violated 15 U.S.C. § 1692e(10) by making false representations or using deceptive means to collect the alleged debt;

f.    Defendants violated 15 U.S.C. § 1692f by making unfair and unconscionable means to collect or attempt to collect the alleged debt; and

g.    Defendants violated 15 U.S.C. § 1692f(1) by attempting to collect an amount not authorized by the agreement creating the alleged debt or permitted by law.

25.    Because of the above violations of the FDCPA, Defendants are liable to Deanne Scroggin Hooker for a declaratory judgment that Defendants' conduct violated the FDCPA, Deanne Scroggin Hooker's actual damages under 15 U.S.C. § 1692k(a)(1); statutory damages of $1,000 under 15 U.S.C. § 1692k(a)(2)(A), and costs and reasonable attorney fees under 15 U.S.C. § 1692k(a)(3).

*Count II–Violations of the AFDCPA, Ark. Code Ann. § 17-24-501, et seq.*

26.    Deanne Scroggin Hooker re-alleges and incorporates the foregoing paragraphs, as if set forth word for word.

27.    Defendants violated the AFDCPA. Defendants' violations include, but are not limited to, the following provisions:

   a.    Defendants violated Ark. Code Ann. § 17-24-505(a) by engaging in conduct the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of a debt.

   b.    Defendants violated Ark. Code Ann. § 17-24-506(a) by using false, deceptive, or misleading representations or means in connection with the collection of a debt.

   c.    Defendants violated Ark. Code Ann. § 17-24-506(b)(2)(A) by making false, deceptive, or misleading representations about the character, amount, or legal status of the alleged debt.

   d.    Defendants violated Ark. Code Ann. § 17-24-506(b)(8) by communicating false credit information, including the failure to communicated that the debt was disputed.

   e.    Defendants violated Ark. Code Ann. § 17-24-506(b)(10) by making false representations or using deceptive means to collect the alleged debt.

f.   Defendants violated Ark. Code Ann. § 17-24-507(a) by making unfair and unconscionable means to collect or attempt to collect the alleged debt.

g.   Defendants violated Ark. Code Ann. § 17-24-507(b)(1) by attempting to collect an amount not authorized by the agreement creating the alleged debt or permitted by law.

28.   Because of the above violations of the AFDCPA, Defendants are liable to Deanne Scroggin Hooker for a declaratory judgment that Defendants' conduct violated the AFDCPA, Deanne Scroggin Hooker's actual damages under Ark. Code Ann. § 17-24-512(a)(1); statutory damages of $1,000 under Ark. Code Ann. § 17-24-512(a)(2)(A), and costs and reasonable attorney fees under Ark. Code Ann. § 17-24-512(a)(3)(A).

### Count III–Malicious Prosecution

29.   Deanne Scroggin Hooker re-alleges and incorporates the foregoing paragraph, as if set forth word for word.

30.   Deanne Scroggin Hooker has sustained damages.

31.   Defendants caused civil proceedings to be initiated against Deanne Scroggin Hooker.

32.   The civil proceedings were terminated in favor of Deanne Scroggin Hooker.

33.   Defendants did not have probable cause for initiating the proceedings.

34.   Defendants acted with an improper or sinister motive in initiating the proceedings.

35.   Defendants' acts were a proximate cause of Deanne Scroggin Hooker's actual damages.

### Count IV–Abuse of Process

36.   Deanne Scroggin Hooker re-alleges and incorporates the foregoing paragraphs, as if set forth word for word.

37.   Deanne Scroggin Hooker has sustained damages.

38.   Defendants set in motion a legal proceeding directed at Deanne Scroggin Hooker.

39.   The proceeding was used to accomplish an ulterior purpose for which it was not designed.

40.   Defendants willfully used process in a manner not proper in the regular conduct of the proceeding.

41.   Defendants' acts were a proximate cause of Deanne Scroggin Hooker's actual damages.

### Count V–Violations of the ADTPA, Ark. Code Ann. § 4-88-101, et seq., against Defendant LVNV Funding

42.   Deanne Scroggin Hooker re-alleges and incorporates the foregoing paragraphs, as if set forth word for word.

43.   The ADTPA is designed to protect Arkansans from deceptive, unfair, and unconscionable trade practices. It is a remedial statute, which is construed broadly.

44.   LVNV Funding and its employees and agents are "persons" as defined in Ark. Code Ann. § 4-88-107(a)(10).

45.   LVNV Funding's and its employees' and agents' actions described are deceptive and unconscionable trade practices made unlawful and prohibited by the ADTPA, including but not limited to engaging in unconscionable, false, or deceptive acts or practices in business, commerce, or trade under Ark. Code Ann. § 4-88-107(a)(10).

46.   LVNV Funding's and its employees' and agents' conduct was willful and wanton.

47.   Deanne Scroggin Hooker suffered actual damages, including emotional distress and mental anguish, as a result of the violations of the ADTPA and may recover her actual damages and reasonable attorney's fees and costs under Ark. Code Ann. § 4-88-113(f).

**Jury Demand**

48.   Deanne Scroggin Hooker demands a jury trial.

**Prayer for Relief**

Deanne Scroggin Hooker prays judgment be entered against Defendants for her actual damages, statutory damages, costs and reasonable attorney fees, and for such other relief as may be just and proper.

Respectfully submitted

Corey D. McGaha
Ark. Bar No. 2003047
William T. Crowder
Ark. Bar No. 2003138
CROWDER MCGAHA, LLP
5507 Ranch Drive, Suite 202
Little Rock, AR 72223
Phone: (501) 205-4026
Fax: (501) 367-8208
cmcgaha@crowdermcgaha.com
wcrowder@crowdermcgaha.com

*Counsel for Plaintiff*

ELECTRONICALLY FILED
Pulaski County Circuit Court
Larry Crane, Circuit/County Clerk
2015-Nov-16 12:55:01
60CV-15-5632
C06D06 : 12 Pages

#15700799

## IN THE CIRCUIT COURT OF PULASKI COUNTY
## STATE OF ARKANSAS

LVNV FUNDING, LLC A LIMITED LIABILITY COMPANY

     Plaintiff(s)

Case No. _____

Division No. _____

DEANNE HOOKER

     Defendant(s)

## **COMPLAINT**

COMES NOW, Plaintiff,  LVNV FUNDING, LLC A LIMITED LIABILITY COMPANY

, and for its cause of action against Defendant(s), states as follows:

1.    All times pertinent therein, Plaintiff was at all times relevant herein a A LIMITED

LIABILITY COMPANY, duly organized and existing under law.

2.    Plaintiff is the holder of a valid assignment of an account previously owned by

CREDIT ONE BANK NA with an account number ending in ************3327.

3.    Defendant(s) is/are resident(s) of PULASKI COUNTY, Arkansas.

4.    Defendant(s) and CREDIT ONE BANK NA had previous financial transactions for

which original creditor issued statements reflecting the transactions, to which Debtor did not object.

5.    By using the credit and receiving the statements without objection, Defendant(s) made

a promise to pay the amount due.

6.    The balance agreed to by the parties is $589.99.

7.    The Defendant(s) has/have failed to keep his/her/their promise to pay said balance,

despite demand for same having been made.

Exhibit 1

8.    Plaintiff is the assignee of CREDIT ONE BANK NA to be repaid by Defendant(s) on the account, and it is entitled to recover from Defendant(s) the sum of $589.99, that being the balance due through May 27, 2015.

WHEREFORE, Plaintiff, LVNV FUNDING, LLC A LIMITED LIABILITY COMPANY prays for judgment against the Defendant(s) in a sum of $589.99, together with post judgment interest as provided by law, for all costs expended herein and for any other and further relief this Court deems just and proper.

GAMACHE & MYERS, P.C.

BY: _____

DONALD C. TIPPETT, Arkansas Bar # 91156
Attorneys for Plaintiff
103B North College
Fayetteville AR 72701
(866) 651-2022
FAX (866) 651-2024

**"THIS COMMUNICATION IS FROM A DEBT COLLECTOR, IN AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE."**

**LVNV Funding LLC**

**vs.**

**Deanne Hooker**

Name of Party to Whom Account is Owed: LVNV Funding LLC

Name of Party Pursuing Collection of Account: LVNV Funding LLC

Name of the Debtor Obligated to Pay Account: Deanne Hooker

## AFFIDAVIT

The undersigned, being duly sworn, states the following:

1.  I am over eighteen (18) years of age and am competent to make this affidavit. I am an Authorized Representative of LVNV Funding LLC (hereinafter, "Plaintiff") and am authorized to make this affidavit on its behalf. The information in this affidavit is true and correct to the best of my knowledge, information and belief, and I declare the same under penalty of perjury.

2.  In the ordinary course of business, Plaintiff regularly acquires revolving credit accounts, installment accounts, and/or other credit lines from original creditors or their successors-in-interest. In the scope of my job responsibilities, I am familiar with the normal books and records of Plaintiff and the manner and method by which Plaintiff maintains said books and records in the regular course of its business, including computer records and/or data of its acquired credit accounts. These books and records contain records provided by the original creditors or their successors-in-interest and records created in the course of regularly conducted business activity at or near the time the events they purport to describe occurred, by a person with knowledge of said events or by a computer or other similar digital means which contemporaneously records an event as it occurs.

3.  Plaintiff acquired the credit account of the Defendant herein, account number ▓▓▓▓▓▓▓▓▓3327, (hereinafter the "Credit Account") from the original creditor or its successor-in-interest. I am familiar with the books and records maintained by Plaintiff with respect to the Credit Account and the information about the Credit Account contained therein.

4.  LVNV Funding LLC is not the original creditor of the Credit Account. Credit One Bank, N.A. is the original creditor of the Credit Account.



567582955

5. Plaintiff's business records for the Credit Account reflect that the balance due and owing to Plaintiff by the Defendant on the Credit Account as of the date of this affidavit is $589.99. All offsets, payments and credits have been allowed. No pre-judgment interest is being sought.


Given under my hand on:

Date: October 5, 2015

_____
Matt Summers
Affiant


County of Greenville            )
                                )
State of South Carolina         )

    Personally appeared before me, the undersigned Notary Public in and for the jurisdiction aforesaid, Matt Summers, who acknowledged before me his/her signature to the foregoing Affidavit.

    Given under my hand and seal this Monday, October 5, 2015

_____
Notary

My Commission Expires:

_____

**CREDIT ONE BANK CREDIT CARD STATEMENT**
Account Number ████████████ 3327
March 28, 2015 to April 27, 2015

| SUMMARY OF ACCOUNT ACTIVITY | |
|---|---|
| Previous Balance | $545.05 |
| Payments | - $0.00 |
| Other Credits | - $0.00 |
| Purchases | + $0.00 |
| Cash Advances | + $0.00 |
| Fees Charged | + $35.00 |
| Interest Charged | + $9.94 |
| New Balance | $589.99 |
| Credit Limit | $300.00 |
| Available Credit | $0.00 |
| Statement Closing Date | 04/27/15 |
| Days in Billing Cycle | 31 |

**QUESTIONS?**

Call Customer Service or Report
a Lost or Stolen Credit Card          1-877-825-3242
Outside the U.S. Call                     1-702-405-2042

Please send billing inquiries and correspondence to:
P.O. Box 98873, Las Vegas, NV 89193-8873

| PAYMENT INFORMATION | |
|---|---|
| New Balance | $589.99 |
| Past Due Amount | $179.00 |
| Amount Due This Period | $445.99 |
| Minimum Payment Due | $589.99 |
| Payment Due Date | 05/23/15 |

**Late Payment Warning:**
If we do not receive your minimum payment by the date listed above,
you may have to pay a late fee up to $35.

**Minimum Payment Warning:**
If you make only the minimum payment each period, you will pay more
in interest and it will take you longer to pay off your balance.

For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on this statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | 1 months | $590.00 |

If you would like a location for credit counseling services,
call 1-866-515-5720.

| TRANSACTIONS | | | | |
|---|---|---|---|---|
| Reference Number | Trans Date | Post Date | Description of Transaction or Credit | Amount |
| | | | **Fees** | |
| | 04/27 | 04/27 | LATE FEE | 35.00 |
| | | | **TOTAL FEES FOR THIS PERIOD** | 35.00 |
| | | | **Interest Charged** | |
| | 04/27 | 04/27 | Interest Charge on Purchases | 9.94 |
| | 04/27 | 04/27 | Interest Charge on Cash Advances | 0.00 |
| | | | **TOTAL INTEREST FOR THIS PERIOD** | 9.94 |

| 2015 Totals Year-to-Date | |
|---|---|
| Total fees charged in 2015 | $140.00 |
| Total interest charged in 2015 | $35.56 |

YOUR ACCOUNT IS SCHEDULED TO BE CHARGED OFF.
THE BALANCE WILL BE DUE IN FULL. CALL (888)
729-6274.

Your account is currently closed.

| INTEREST CHARGE CALCULATION | | | |
|---|---|---|---|
| Your Annual Percentage Rate (APR) is the annual interest rate on your account. | | | |
| Type of Balance | Annual Percentage Rate (APR) | Balance Subject to Interest Rate | Interest Charge |
| Purchases | 23.90%(v) | $498.80 | $9.94 |
| Cash Advances | 23.90%(v) | $0.00 | $0.00 |
| (v) = Variable Rate | | | |

5385       JBH       001   7   27   150427   0      C X PAGE 1 of 1       2 0   5727   9620   A064   O1DL5385

Please return this portion with your payments, and write your account number on your check, made payable to *CREDIT ONE BANK.*

**PAY YOUR BILL ONLINE at CreditOneBank.com**

| Account Number: | ████████████ 3327 |
|---|---|
| New Balance: | $589.99 |
| Minimum Payment Due: | $589.99 |
| Payment Due Date: | 05/23/15 |

☐ For address, telephone and email changes,
please check the box and complete the reverse side.
Or, update your contact information online
at www.CreditOneBank.com.

AMOUNT ENCLOSED:   $ _____

CREDIT ONE BANK
PO BOX 60500
CITY OF INDUSTRY CA 91716-0500

DEANNE HOOKER
58 PIN OAK LOOP
MAUMELLE AR 72113-6803

0000000  0058999  0058999  ████████ 03327  5





D809

| Interest Rates and Interest Charges | |
|---|---|
| **ANNUAL PERCENTAGE RATE (APR) for Purchases and Cash Advances** | **23.90%**<br>This APR will vary with the market based on the Prime Rate. |
| **Paying Interest** | We will begin charging interest on purchases and cash advances on the posting date. |
| **Minimum Interest Charge** | If you are charged interest, the minimum Interest Charge will be no less than $1.00 for any billing cycle in which an Interest Charge is due. Credit lines less than $400 will not receive a minimum Interest Charge in the first year (Introductory period). |
| **For Credit Card Tips from the Consumer Financial Protection Bureau** | To learn more about factors to consider when applying for or using a credit card, visit the website of the Consumer Financial Protection Bureau at https://www.consumerfinance.gov/learnmore. |

| Fees | |
|---|---|
| **Set-up and Maintenance Fees** | Notice: The Annual Membership Fee will be billed to your account when it is opened and will reduce the amount of your initial available credit. If your account is established with a $300 credit line, your initial available credit will be $225. If established with a $400 credit line, then $325 initial available credit. If established with a $500 credit line, then $425 initial available credit.<br><br>You may still reject this plan, provided that you have not yet used the account or paid a fee after receiving a billing statement. If you do reject the plan, you are not responsible for any fees or charges. |
| · Annual Membership Fee | **$75** First year (Introductory period). **$99** thereafter, billed monthly at $8.25. |
| · Authorized User Participation Fee | **$19** annually (if applicable). |
| **Transaction Fees**<br>· Cash Advance | **$0** First year (Introductory period). Thereafter, either **$5** or **8%** of the amount of each cash advance, whichever is greater. |
| **Penalty Fees**<br>· Late Payment | Up to **$35** |
| · Returned Payment | Up to **$35** |

**How We Will Calculate Your Balance:** We use a method called "average daily balance (including new purchases)." See your Cardholder Agreement, Disclosure Statement and Arbitration Agreement ("Agreement") for more details.

**Billing Rights:** Information on your rights to dispute transactions and how to exercise those rights is provided in your account agreement.

## VISA/MASTERCARD CARDHOLDER AGREEMENT,
## DISCLOSURE STATEMENT AND ARBITRATION AGREEMENT

This Agreement, together with the application you previously signed and the enclosed Arbitration Agreement, governs the use of your VISA® or Mastercard® Account issued by Credit One Bank, N.A. (the "Account," "Card" or "Card Account"). The words "you," "your" and "Cardholder(s)" refer to all persons, jointly and severally, authorized to use the Card Account; and "we," "us," "our," and "Credit One Bank" refer to Credit One Bank, N.A., its successors or assigns. By requesting and receiving, signing or using your Card, you agree as follows:

**IMPORTANT NOTICE:** Please read the Arbitration Agreement portion of this document for important information about your and our legal rights under this Agreement.

**1. CHANGES IN AGREEMENT TERMS:** We can change any term of this Agreement, including the rate of the finance charge or the manner in which the finance charge are calculated, or add new terms to this Agreement, at any time upon such notice to you as is required by law. As permitted by law, any change will apply to your new activity and, in certain circumstances, to your outstanding balance when the change is effective. If you do not wish to be subject to the change, you must notify Credit One Bank by calling our toll-free number at 866-515-5721 or you may write to us at Bank Card Center, P.O. Box 95516, Las Vegas, NV 89193-5516 prior to the effective date of the change, and close your Account.

**2. JOINT ACCOUNTS:** If the application was for more than one person, or if an application was made and accepted by Credit One Bank to add a new Cardholder to an existing Account, this is a "Joint Account." Each of you individually may use the Account to the extent of the credit limit established for the Account, and each of you is jointly and severally liable for the full outstanding balance, including, but not limited to, charges made by any Cardholder. Each of you shall also be jointly and severally liable for any charges made by any person given permission to use the Account by any Cardholder. You agree that Credit One Bank is authorized to act on the instructions of any Cardholder. Instructions from any one of you will constitute instructions from all of you. Requests from a Cardholder to terminate the privileges of another Cardholder on the Account will be deemed a request for termination of the Account.

**3. AUTHORIZED USER:** At your request, we may, at our discretion, issue an additional card in the name of an Authorized User with your credit card account number. If you allow someone to use your Account, that person will be an Authorized User. By designating an Authorized User who is at least fifteen years of age, you understand that: 1) you will be solely responsible for the use of your Account and each card issued on your Account including all charges and transactions made by the Authorized User and any fees resulting from their actions to the extent of the credit limit established for the Account; 2) the Authorized User will have access to certain account information including balance, available credit and payment information. If you provide an Authorized User with any information that enables him/her to access or use your Account, you agree to be liable for the Authorized User's use of that information, and we will have no responsibility or liability for any of the Authorized User's actions; 3) we reserve the right to terminate the Card Account privileges of an Authorized User by closing your Account and issuing you a new account number; 4) the Account may appear on the credit report of the Authorized User. If you advise us that the Authorized User is your spouse, information regarding the Account will be provided to consumer reporting agencies in your name as well as in the name of the Authorized User; 5) the Authorized User can make payments, report the card lost or stolen and remove him or herself from the Account; 6) you can request the removal of the Authorized User from your Account via mail or telephone.
**Authorized User Annual Participation Fee:** An Authorized User Annual Participation Fee of $19.00 will be imposed for issuing a card in the Authorized User's name. This Fee will be assessed annually in the month the Authorized User was added to the Account.

**4. CONFLICTS BETWEEN CARDHOLDERS:** In the event Credit One Bank receives conflicting instructions from one or more of you, or if Credit One Bank has reason to believe there is a dispute between the Cardholders, Credit One Bank may, at its sole discretion, take one or more of the following actions: (1) refuse to act on any conflicting instructions; (2) restrict the Account and deny access to all Cardholders until the dispute is resolved; or (3) terminate the Account. In no event will Credit One Bank be liable for any delay or refusal to honor a request for an advance or any other request with respect to your Account, or for restricting or terminating the Account as provided in this section.

**5. YOUR CREDIT LIMIT:** Your Credit Limit will be established by Credit One Bank and will be disclosed to you when your Card is issued. It also will be shown on each of your billing statements. We reserve the right to modify your Credit Limit from time to time, and if we do so, we will notify you. You agree not to engage in any Card transaction that would cause your outstanding balance to exceed your Credit Limit. Credit One Bank may, but is not obligated to, extend credit to you from your Account if you are already up to your Credit Limit or if the borrowing would take you over your Credit Limit at any time. You must pay us on demand any amount by which your Account's balance exceeds your Credit Limit. If we extend credit over your Credit Limit, we will not be obligated to do so again, and such extension will not result in any waiver of our rights under this paragraph.

**6. USING YOUR CARD:** You and any Joint Cardholder or Authorized User may use your Cards: (1) to make purchases of goods or services at merchant establishments where the Card is accepted, and (2) to obtain cash advances (i.e., loans of money) at participating financial institutions. Each purchase and cash advance obtained will reduce the available credit under your credit limit until it is repaid. Cash advances are limited to 25% of your assigned credit limit. Cash advances cannot exceed two transactions or more than $200.00 per day, as applicable. You promise to pay us, when due, the total amount of all purchases and cash advances, as well as all finance charges, and other fees and charges billed to your Card Account. You may not use your Card for any illegal purpose. You further acknowledge that the Card Account will be for personal use and may not be used for business purposes.

**7. AUTHORIZATION:** Merchants or banks may contact us on your behalf to obtain authorization for Card purchases or cash advances. You agree that we shall have no liability if: (a) any merchant or bank refuses to honor any Card issued to access the Account, (b) operational difficulties prevent authorization of a transaction, (c) authorization is declined because your Account is overlimit or delinquent, or (d) credit has been restricted pursuant to any term of this Agreement.

**8. YOUR MONTHLY STATEMENT:** Your Account will be on a monthly billing cycle. We will send you a statement each month that there is activity or an outstanding balance on your Account. The statement itemizes your Account activity, including purchases, cash advances, fees, finance charges, other charges, and payments and credits posted during the billing period. The payment coupon portion of the statement will serve as your bill. When making payment, write your Account number on your check or money order and return the coupon with your payment. You should retain the remaining portion of your statement for your records. If the Bank offers, and you elect to receive, your monthly statement electronically, paper statements will not be mailed to you. You will be responsible for making your payments by the due date, either through the Bank's website or telephone, for which a fee may apply, or by mailing your payment to the appropriate address designated for receipt of payments by mail. Credit One Bank will not be responsible for processing delays or failure to process the payment to your Account if a payment sent by mail does not contain your Account number or is not accompanied by your payment coupon. Your payment will be credited to your Account, as of the date of receipt, if the payment is received by 5:00 p.m. Pacific Time ("PT").

**9. ANNUAL MEMBERSHIP FEE:** The Annual Membership Fee for your Account in year one is $75.00 (Introductory period) and will be billed to your Account when it is opened. The Annual Membership Fee for your Account beginning in year two is $99.00 and will be billed to your Account in monthly installments of $8.25 per month.

The Annual Membership Fee will be billed to your Account as long as it remains open or, if your Account is closed by you or us, the Annual Membership Fee will continue to be charged until you pay your outstanding balance in full. The Annual Membership Fee is refundable as long as you cancel your Account and have not used your card for any Purchases or Cash Advances and you have not made a payment. An Annual Membership Fee Notice, as required by regulation, will be provided to you at least once every 12 months. The Annual Membership Fee is imposed for providing services related to your Account, including but not limited to: the opportunity to use your card with participating merchants, providing renewal cards, providing availability of customer service representatives for assistance, providing credit information to credit reporting agencies, and providing the opportunity for additional credit.

**10. FINANCE CHARGES:** Your Card Account is subject to finance charges and the total Finance Charges in your monthly billing cycle are the sum of the Periodic Finance Charges, Transaction Finance Charges, and Credit Limit Increase Fees which are calculated as follows:
**(a) Periodic Finance Charges:** For purchases and cash advances, Credit Limit Increase Fees, Annual Membership Fees, Late Payment Fees and other fees and charges to your Account, the Periodic Finance Charge is calculated as follows: The **Annual Percentage Rate ("APR")** for Purchases and Cash Advances may vary and will be determined by adding **20.65%** to the U.S. Prime Rate appearing in the "Money Rates" section of any edition of *The Wall Street Journal* published on the 25th day of each month. If the *Journal* is not published on that day, then the Prime Rate on the next business day will be used. If the Prime Rate changes, the new rate will take effect on the first day of the following month. The new rate will be applied to all balances on the Account. The estimated **APR** for all balances is 3.25% plus 20.65%, currently **23.90%** (corresponding monthly periodic rate of 1.9916%). The **APR** will never be greater than **29.90%** (corresponding monthly periodic rate of 2.4916%). The most recent Annual Percentage Rate was disclosed to you when you received your credit card. There is a **Minimum Interest Charge** if you are charged interest; the minimum Interest Charge will be no less than **$1.00** for any billing cycle in which an Interest Charge is due. Credit lines less than $400 will not receive a minimum Finance Charge in the first year (introductory period). Periodic Finance Charges will be assessed from the date the purchase, cash advance, fee or charge is posted to your Account until the date it is paid in full, and will be calculated by applying the monthly periodic rate to the "average daily balance" of your Account. To get the "average daily balance," we take the beginning balance of your Account each day, add any new purchases, cash advances, fees and charges, and subtract any payments or credits and unpaid periodic Finance Charges. This gives us the daily balance. Then we add up all the daily balances for the billing cycle, and divide the total by the number of days in the billing cycle. This gives us the "average daily balance." Periodic Finance Charges will be assessed on all "average daily balances" until paid in full. All purchases, cash advances, fees or charges accrue finance charges starting on the date of posting, even if the new balance from your previous statement was paid in full or even if that new balance was zero.
**(b) Cash Advance Transaction Finance Charges:** The Cash Advance Transaction Fee for the first year is $0 (introductory period). After the first year, each time you obtain a new cash advance, we will impose a Transaction Fee **Finance Charge of 8%** of the amount advanced or **$5.00**, whichever is greater.
**(c) Credit Limit Increase Finance Charges:** A fee may be imposed for Credit Limit Increases, as described under the "Credit Limit Increase Requests" section of this Agreement.
**(d) Foreign Transaction Finance Charges:** Each time you make a foreign transaction, we may impose a Transaction Fee **Finance Charge of 3%** of the amount charged or **$1.00**, whichever is greater. For additional information, see the "Foreign Transaction" section of this Agreement.
**(e) Fees Treated as Principal:** For purposes of Finance Charge calculation, Credit Limit Increase Fees, Annual Membership Fees, Late Payment Charges, and other charges, except cash advance fees, will be treated like purchase transactions, posted as principal, and accrue Finance Charges like purchases.
**(f) Periodic Statement Annual Percentage Rate:** If a finance charge imposed is required to be included in calculating the Annual Percentage Rate under the Federal Truth-in-Lending Act, the Annual Percentage Rate disclosed on your statement may exceed the corresponding Annual Percentage Rate disclosed in this Agreement for any billing period in which such finance charge is posted to your Account.

**11. LATE PAYMENT CHARGES:** If at least the Amount Due This Period (less any Late Payment Fee for the current billing cycle) and Amount Past Due are not received by 5:00 p.m. PT on the Payment Due Date shown on your statement, a Late Payment Fee of up to $35.00 will be charged to your Account.

**12. OTHER CHARGES:** In addition to the fees and charges described above, other charges that may be imposed on your Account include the following: (1) Returned Payment Fee: If a payment is returned for any reason, a Returned Payment Fee of up to $35.00 will be charged to your Account; (2) Duplicate Statement Fee: If you request a duplicate copy of a monthly statement, you will be charged a fee of up to $10.00 for each statement copy requested; (3) Sales Slip Request Fee: If you request a copy of a sales slip, for any purpose other than to resolve a dispute about the charges on your Account, you will be charged a fee of $6.00 for each sales slip copy requested; (4) Co-applicant Fee: To add an additional Cardholder to the Account after it is opened, an application must be submitted to Credit One Bank. The co-applicant fee in effect at the time of such application will be required; and (5) Replacement Card Fee: If you request a replacement card, a Replacement Card Fee of $25.00 may be charged to your Account.

**13. MINIMUM PAYMENTS:** (a) You agree to pay either the entire outstanding balance or the Minimum Payment Due, as shown on your monthly statement. The Minimum Payment Due is 5% of your outstanding balance, rounded up to the next whole dollar, or $25.00, whichever is greater, plus any Late Payment Fee for the current billing cycle, and any Past Due Amount. For your Account to be considered current and to avoid a Late Payment Fee, you must pay at least the Amount Due This Period (less any Late Payment Fee for the current billing cycle) and the Past Due Amount by the Payment Due Date shown on your statement. (b) Certain other service fees may be added to your minimum payment amount. When you sign up for such services, you will be notified if a fee for the service will be imposed and if it is required to be added to your minimum payment.

**14. SMALL BALANCES:** As it is uneconomical for both you and us to process payments or maintain credits that are $1.00 or less in amount, you agree as follows: (1) In any billing cycle in which you have had no transactions and your New Balance on the billing date is $1.00 or less, the balance will be rounded to zero and you will not receive a bill for this amount. (2) In the event that you have a credit balance of $1.00 or less for two consecutive billing cycles, the balance will be rounded to zero and you will not receive a refund of this amount.

**15. MAKING PAYMENTS:** Your payments must be made in US currency only, drawn on a bank domiciled in the US, through paper or electronic format not to include wire transfer or electronic transactions via Credit One Bank's account at the Federal Reserve Bank. Do not send cash through the mail, as Credit One Bank cannot be responsible for cash lost in the mailing process. To the extent that a payment reduces the principal amount outstanding on your Card Account, new credit will be available (subject to your credit limit), but only after 12 calendar days after our receipt of the payment. To insure prompt posting of payments sent through the mail, your payments must be sent to the address indicated on your statement and must be received by 5:00 p.m. PT. There will be a delay in posting payments to your Account for payments not sent to the address shown on your statement. You agree that we may process any item delivered to us for payment on the day it is received, and that we are not required to honor special instructions or restrictive endorsements. As described above, if any payment is received that does not contain your Account number or is not accompanied by your payment coupon, Credit One Bank will not be liable for processing delays or failure to process the payment to your Account. Crediting of such payments may be delayed up to five business days of receipt.
**Treatment of Check Payments:** When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your bank account or to process the payment as a check transaction. If a check we process in paper form is returned to us by your bank unpaid, we may re-present the returned check electronically.

**16. POSTDATED CHECKS:** You agree that we need not examine any payment check to confirm that it is not postdated, and that we may deposit any postdated check for payment to us on the day we receive it.

**17. IRREGULAR PAYMENTS:** Any payment submitted in offer of settlement of a disputed debt, including any check containing a notation such as "paid in full," must be sent to the following address: Credit One Bank, P.O. Box 95516, Las Vegas, NV 89193-5516. If you do not forward any check or other payment marked "paid in full" to the above address, we can accept late payments or partial payments, or checks or other payments marked with similar notations, without losing any of our rights under this Agreement, including our right to seek payment of the full balance of your Account.

**18. VERIFICATION OF INFORMATION: (a) Credit Information:** You authorize us to obtain and/or use information about you from third parties and credit reporting agencies to: 1) verify your identity and/or conduct investigative inquiries; 2) determine your income and credit eligibility; 3) review your Account and provide renewal of credit; 4) verify your current credit standing in order to present future credit line increases or decreases; 5) qualify you for and present additional lines of credit or other offers; and 6) collect amounts owing on your Account. California residents, you agree to waive your right to keep confidential information under Section 1808.21 of the California Vehicle Code from us. **(b) Reporting Information:** We may furnish information concerning your Account or credit file to consumer reporting agencies and others who may properly receive that information. However, we are not obligated to release such information to anyone unless we are required to do so by law or a proper Power of Attorney is provided. **(c) Telephone Monitoring:** To be sure that your inquiries are handled properly, courteously and accurately, some of the telephone calls between our employees and our customers are monitored by supervisory or management personnel. Recordings may be made of such calls for your protection.

**19. COMMUNICATIONS:** You are providing express written permission authorizing Credit One Bank or its agents to contact you at any phone number (including mobile, cellular/wireless, or similar devices) or email address you provide at anytime, for any lawful purpose. The ways in which we may contact you include live operator, automatic telephone dialing systems (auto-dialer), prerecorded message, text message or email. Phone numbers and email addresses you provide include those you give to us, those from which you contact us or which we obtain through other means. Such lawful purposes include, but are not limited to: obtaining information; activation of the card for verification and identification purposes; account transactions or servicing related matters; suspected fraud or identity theft; collection on the Account; and providing information about special products and services. You agree to pay any fee(s) or charge(s) that you may incur for incoming communications from us or outgoing communications to us, to or from any such number or email address, without reimbursement from us.

**20. DEFAULT:** You will be in default under this Agreement if any of the following events occur: (1) you exceed your assigned credit limit; (2) you fail to make any required payment when due; (3) you die, become insolvent, file a petition in bankruptcy or similar proceeding, or are adjudged bankrupt; (4) you provide any false or misleading financial or biographical information to Credit One Bank; (5) any representation or warranty you make to Credit One Bank is false or breached; (6) a guardian, conservator, receiver, custodian or trustee is appointed for you; (7) you are generally not paying your debts as they become due; (8) the Bank reasonably believes there has been a material adverse change in your financial condition; or (9) you violate any term of this Agreement. Upon your default, Credit One Bank can close or refuse to renew your Account, demand the return of your card(s), declare your entire balance immediately due and payable, and initiate collection activity, all without prior notice or demand. You promise to pay any collection costs and attorneys' fees, including our in-house attorneys' costs, that Credit One Bank incurs as a result of your default.

**21. TERMINATION OF ACCOUNT:** This Account may be terminated by you at any time by giving notice in writing to Credit One Bank. If your Account is closed by you or us, the Annual Membership Fee will continue to be charged until you pay your outstanding balance in full. Credit One Bank may terminate the Account and demand payment in full if you are in default under any of the terms and conditions of this Agreement, or if there is a dispute between the Cardholders as described elsewhere in this Agreement, or if a Cardholder requests termination of the Account privileges of any other Cardholder, or without cause if Credit One Bank deems termination of the Account to be in its best interests. In the event of voluntary or involuntary Account termination, all credit privileges under the Account and Credit One Bank membership will be terminated immediately. However, when your Account is closed, if there is: (1) a debit balance of $1.00 or less, that balance will be rounded to zero and you will not be required to pay this amount; or (2) a credit balance of $1.00 or less, that balance will be rounded to zero and this amount will not be refunded to you. The rounding to zero may occur after your closing statement cycles, and you may not receive a statement reflecting the rounding.

**22. SECURITY:** This is an unsecured Account, and Credit One Bank retains no security interest in your real or personal property to secure payment of your Card Account.

**23. CARD OWNERSHIP AND ACCEPTANCE:** Any credit card or other credit instrument issued to you remains the property of Credit One Bank and must be surrendered to Credit One Bank or its agent on demand. We are not liable for the refusal of Credit One Bank or any other party to honor your Card for any reason. All Cards have an expiration date. We have the right not to renew your Card for any reason.

**24. FOREIGN TRANSACTIONS:** If you make a transaction at a merchant that settles in a currency other than U.S. dollars, MasterCard Worldwide or Visa Inc. will convert that charge into a U.S. Dollar amount. That conversion will be done at a rate selected by MasterCard or Visa from the range of rates available in wholesale currency markets for the applicable central processing date, which rate may vary from the rate MasterCard or Visa itself receives, or the government-mandated rate in effect for the applicable central processing date. The currency conversion rate used on the processing date may differ from the rate that would have been used on the purchase date or on the date the transaction is posted to your Account. You agree to pay the converted amount, including any charges for the conversion that may be imposed as described above. A fee may be imposed for foreign transactions as described under the Finance Charge section of this Agreement.

**25. LOST OR STOLEN CARDS:** You may be liable for unauthorized use of your Card. If your Card is lost or stolen or you suspect that someone is using your Card without your permission, you should immediately notify Credit One Bank's Bank Card Center. You can call **(877) 825-3242.** You can also notify us in writing at **Bank Card Center, P.O. Box 98672, Las Vegas, NV 89193-8672.** You will not be liable for any unauthorized use that occurs after you notify us, orally or in writing, of the loss, theft or possible unauthorized use. In any event, your liability for unauthorized use will not exceed $50. If you allow someone to use your Card to make charges to your Card Account, you can terminate this user's authority by retrieving the Card and returning it to us. Until you do, you remain liable for any use by the authorized user. You understand and agree that this Card Account may be replaced with a substitute Account if a credit card for this Account is lost or stolen, or in the event unauthorized use of the Account is reported. All terms and conditions of this Agreement and the application shall apply to any substitute Account.

**26. CREDIT LIMIT INCREASE REQUESTS:** Credit Limit increase requests must be made in accordance with procedures established from time to time by Credit One Bank. A fee may be imposed for credit limit increases. The fee imposed will be a **Finance Charge** of between **$0.00** and **$49.00**, depending on how long your Account has been established and your credit history with us and others. We will advise you which fee is applicable to your Account at the time you apply for a credit limit increase. Credit limit increase requests are subject to the same credit process as your original application, including review of credit bureau information. You will be notified by mail if your request for an increase is declined. Approval will be indicated in the form of a credit limit increase on your Card Account statement. For information on Credit One Bank's procedure for applying for a credit limit increase, contact us at **(877) 825-3242.**

**27. WAIVER OF RIGHTS:** If we waive any of our rights under this Agreement, we will not be obligated to do so again.

**28. CUSTOMER PRIVACY:** The privacy policy for Credit One Bank is provided separately in accordance with applicable law.

**29. GOVERNING LAW:** This Agreement is governed by and interpreted in accordance with the laws applicable to national banks, and, where no such laws apply, by the laws of the State of Nevada, excluding the conflicts of law provisions thereof, regardless of your state of residence.

**30. ARBITRATION AGREEMENT:** The Arbitration Agreement provided to you with this Agreement governs the enforcement by you and us of your and our legal rights under this Agreement.

## CREDIT ONE GAS REWARDS PROGRAM ("PROGRAM")

This Credit One Gas Rewards Program (the "Program") supplements the Visa/MasterCard Cardholder Agreement, Disclosure Statement and Arbitration Agreement (collectively, the "Cardholder Agreement") you received with your credit card account issued by Credit One Bank, N.A. (the "Account"). In this Program, the words "we," "us," "our" and "Credit One" refer to Credit One Bank, N.A. and the words "you" and "your" refer to all persons, jointly and severally, authorized to use the Account and thereby participate in the Program. By using your Account, you agree to participate in the Program and to the terms and conditions regarding the Program contained herein. In the event of any conflict between the Cardholder Agreement and this Program with respect to matters relating to the Program, this Program shall control.

**EARNING GAS REWARDS:** You will receive cash back in the form of an automatic statement credit equal to 1% of "eligible net gas purchases" (as defined below) made with your Account. We will post a statement credit to your Account within seven days of the end of the month equal to 1% of "eligible net gas purchases" made with your Account from the 27th of the previous month to the 26th of the current month. If your Account is in default, as defined within your Cardholder Agreement at the time the credit is to be posted, you WILL NOT receive the credit. The eligible credit(s) will show on your billing statement as "Credit One Rewards Credit."

**ELIGIBLE NET GAS PURCHASES:** Eligible net gas purchases are purchases of gasoline from merchants using Standard Industrial Classification Codes ("SIC Codes") 5172, 5541 and 5542 minus any returns or other credits using these same SIC Codes. We make every effort to include all relevant SIC Codes within the gas reward category. Although a merchant or the items that it sells may appear to fit the gas reward category, the merchant may not have or use an SIC Code that falls within the gas reward category and purchases with that merchant will not qualify for gas rewards. You WILL NOT earn gas rewards if a merchant does not submit the purchase using the correct SIC Code or uses an SIC Code that we have not designated for gas rewards. A gas merchant with more than one location may submit gas purchases using different SIC Codes, including SIC Codes that do not qualify under this Program. This means that gas purchases from the same merchant at a different location may result in no reward. Gas merchants sell automotive gasoline that can be paid for either at the pump or inside the station, and may or may not sell other goods or services at their location. Gas purchases from oil and propane distributors, and home heating companies are not eligible for gas rewards.

**PROGRAM RESTRICTIONS:** You will receive automatic gas rewards credits on each statement that has at least one eligible net gas purchase. Automatic statement credits for gas rewards will reduce the balance on your Account but will not count as payments. You will still be required to pay at least the Minimum Payment Due as shown on your billing statement each month. You WILL NOT earn rewards for gas purchases made while your Account is in default as defined within your Cardholder Agreement. Disputed or unauthorized purchases/fraudulent transactions and illegal transactions do not earn rewards, unless otherwise specified. This Program excludes Accounts already enrolled in a different Credit One rewards program.

**AMENDMENTS:** The Program may be amended (added to, modified or deleted) by us at any time, including without limitation amendments of eligible SIC Codes without prior notice and will take effect immediately. The current version of this Program may be found at CreditOneBank.com in the Cardholder Agreement section of the Customer Service tab. Any revisions may affect your ability to earn gas rewards.

**TERMINATION:** We may suspend or terminate the Program or your participation in the Program at any time without prior notice. In such event, we will evaluate your Account for any eligible gas rewards as of the Program termination date. Provided that you meet all of the other Program Restrictions listed above at that time, you will receive a distribution of the gas rewards earned during the current billing period in the form of a statement credit.

**LIMITED LIABILITY:** Unless otherwise required by law, this Program, or our Cardholder Agreement with you, we will not be liable to you or anyone making a claim on your behalf, in connection with: 1) any change or termination of the Program; 2) any loss, damage, expense or inconvenience caused by any occurrence outside of our control; 3) any taxes that you incur as a result of receiving rewards, payment of which taxes will be your responsibility; 4) any merchandise or services you purchase, or for any direct, indirect or consequential damages with respect to the use of your Account. In any event, any liability that Credit One may have to you in connection with the Program shall be limited to the amount of any rewards you have earned in this Program. The Program and rewards are void or limited where prohibited or restricted, respectively, by federal, state or local law.

## YOUR BILLING RIGHTS - KEEP THIS NOTICE FOR FUTURE USE

**This notice tells you about your rights and our responsibilities under the Fair Credit Billing Act.**

**What To Do If You Find a Mistake on Your Statement**
If you think there is an error on your statement, write to us at: **Bank Card Center, P.O. Box 98872, Las Vegas, NV 89193-8872.**
In your letter, give us the following information:
· *Account information:* Your name and account number.
· *Dollar amount:* The dollar amount of the suspected error.
· *Description of problem:* If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.
You must contact us:
· Within 60 days after the error appeared on your statement.
· At least 3 business days before an automated payment is scheduled, if you want to stop payment on the amount you think is wrong.
You must notify us of any potential errors *in writing.* You may call us at **877-825-3242**, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

**What Will Happen After We Receive Your Letter**
When we receive your letter, we must do two things:
1. Within 30 days of receiving your letter, we must tell you that we received your letter. We will also tell you if we have already corrected the error.
2. Within 90 days of receiving your letter, we must either correct the error or explain to you why we believe the bill is correct.
While we investigate whether or not there has been an error:
· We cannot try to collect the amount in question, or report you as delinquent on that amount.
· The charge in question may remain on your statement, and we may continue to charge you interest on that amount.
· While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
· We can apply any unpaid amount against your credit limit.
After we finish our investigation, one of two things will happen:
· *If we made a mistake:* You will not have to pay the amount in question or any interest or other fees related to that amount.
· *If we do not believe there was a mistake:* You will have to pay the amount in question, along with applicable interest and fees. We will send you a statement of the amount you owe and the date payment is due. We may then report you as delinquent if you do not pay the amount we think you owe.
If you receive our explanation but still believe your bill is wrong, you must write to us within *10 days* telling us that you still refuse to pay. If you do so, we cannot report you as delinquent without also reporting that you are questioning your bill. We must tell you the name of anyone to whom we reported you as delinquent, and we must let those organizations know when the matter has been settled between us. If we do not follow all of the rules above, you do not have to pay the first $50 of the amount you question even if your bill is correct.

**Your Rights If You Are Dissatisfied With Your Credit Card Purchases**

If you are dissatisfied with the goods or services that you have purchased with your credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the purchase. To use this right, all of the following must be true:

1. The purchase must have been made in your home state or within 100 miles of your current mailing address, and the purchase price must have been more than $50 (Note: Neither of these are necessary if your purchase was based on an advertisement we mailed to you, or if we own the company that sold you the goods or services.)
2. You must have used your credit card for the purchase. Purchases made with cash advances from an ATM or with a check that accesses your credit card account do not qualify.
3. You must not yet have fully paid for the purchase. If all of the criteria above are met and you are still dissatisfied with the purchase, contact us *in writing* at: **Bank Card Center, P.O. Box 98872, Las Vegas, NV 89193-8872.**

While we investigate, the same rules apply to the disputed amount as discussed above. After we finish our investigation, we will tell you our decision. At that point, if we think you owe an amount and you do not pay, we may report you as delinquent.

## ARBITRATION

**PLEASE READ THIS PROVISION OF YOUR CARD AGREEMENT CAREFULLY. IT PROVIDES THAT EITHER YOU OR WE CAN REQUIRE THAT ANY CONTROVERSY OR DISPUTE BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY A NEUTRAL ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN RULES APPLICABLE IN COURT. IN ARBITRATION, YOU MAY CHOOSE TO HAVE A HEARING AND BE REPRESENTED BY COUNSEL.**

*Agreement to Arbitrate:* You and we agree that either you or we may, without the other's consent, require that any controversy or dispute between you and us (all of which are called "Claims"), be submitted to mandatory, binding arbitration. This arbitration provision is made pursuant to a transaction involving interstate commerce, and shall be governed by, and enforceable under, the Federal Arbitration Act (the "FAA"), 9 U.S.C. §1 et seq., and (to the extent State law is applicable), the State law governing this Agreement.

*Claims Covered:*

· Claims subject to arbitration include, but are not limited to, disputes relating to the establishment, terms, treatment, operation, handling, limitations on or termination of your account; any disclosures or other documents or communications relating to your account; any transactions or attempted transactions involving your account, whether authorized or not; billing, billing errors, credit reporting, the posting of transactions, payment or credits, or collections matters relating to your account; services or benefits programs relating to your account, whether or not they are offered, introduced, sold or provided by us: advertisements, promotions, or oral or written statements related to (or preceding the opening of) your account, goods or services financed under your account, or the terms of financing; the application, enforceability or interpretation of this Agreement, including this arbitration provision; and any other matters relating to your account, a prior related account or the resulting relationships between you and us. Any questions about what Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced.

· Claims subject to arbitration include not only Claims made directly by you, but also Claims made by anyone connected with you or claiming through you, such as a co-applicant or authorized user of your account, your agent, representative or heirs, or a trustee in bankruptcy. Similarly, Claims subject to arbitration include not only Claims that relate directly to us, a parent company, affiliated company, and any predecessors and successors (and the employees, officers and directors of all of these entities), but also Claims for which we may be directly or indirectly liable, even if we are not properly named at the time the Claim is made.

· Claims subject to arbitration include Claims based on any theory of law, any contract, statute, regulation, ordinance, tort (including fraud or any intentional tort), common law, constitutional provision, respondeat superior, agency or other doctrine concerning liability for other persons, custom or course of dealing or any other legal or equitable ground (including any claim for injunctive or declaratory relief). Claims subject to arbitration include Claims based on any allegations of fact, including an alleged act, inaction, omission, suppression, representation, statement, obligation, duty, right, condition, status or relationship.

· Claims subject to arbitration include Claims that arose in the past, or arise in the present or future. Claims are subject to arbitration whether they are made independently or with other claims in proceedings involving you, us or others. Claims subject to arbitration include Claims that are made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise, and a party who initiates a proceeding in court may elect arbitration with respect to any Claim(s) advanced in the lawsuit by any other party or parties. Claims subject to arbitration include Claims made as part of a class action or other representative action, and the arbitration of such Claims must proceed on an individual basis.

· If you or we require arbitration of a particular Claim, neither you, we, nor any other person may pursue the Claim in any litigation, whether as a class action, private attorney general action, other representative action or otherwise.

· Claims are not subject to arbitration if they are filed by you or us in a small claims court, so long as the matter remains in such court and advances only an individual claim for relief.

*Initiation of Arbitration:* The party filing an arbitration must choose an arbitration administrator. Arbitration administrators are independent from us, and you must follow their rules and procedures for initiating and pursuing an arbitration. If you initiate the arbitration, you must also notify us in writing at Credit One Bank, P.O. Box 95516, Las Vegas, NV 89193-5516. If we initiate the arbitration, we will notify you in writing at your then current billing address or (if your account is closed) the last address we have on file for you. Any arbitration hearing that you attend will be held at a place chosen by the arbitrator or arbitration administrator in the same city as the U.S. District Court closest to your billing address, or at some other place to which you and we agree in writing. You may obtain copies of the current rules of the arbitration administrators, and other related materials, including forms and instructions for initiating an arbitration, by contacting the arbitration administrators as follows:

| | |
|---|---|
| **American Arbitration Association**<br>335 Madison Avenue, Floor 10<br>New York, NY 10017-4605<br>Web Site: www.adr.org | **JAMS**<br>1920 Main Street, Suite 300<br>Irvine, CA 92614-7279<br>Web Site: www.jamsadr.com |

*Procedures and Law Applicable in Arbitration:* A single arbitrator will resolve Claims. The arbitrator will either be a lawyer with at least ten years experience or a retired or former judge. The arbitrator will be selected in accordance with the rules of the arbitration administrator and will be neutral. The arbitration will be conducted under the applicable procedures and rules of the arbitration administrator that are in effect on the date the arbitration is filed unless this arbitration provision is inconsistent with those procedures and rules, in which case this Agreement will prevail. These procedures and rules may limit the amount of discovery available to you or us. The arbitrator will apply applicable substantive law consistent with the FAA and applicable statutes of limitations, and will honor claims of privilege recognized at law. The arbitrator will take reasonable steps to protect customer account information and other confidential information, including the use of protective orders to prohibit disclosure outside the arbitration, if requested to do so by you or us. The arbitrator will have the power to award to a party any damages or other relief provided for under applicable law, and will not have the power to award relief to, against, or for the benefit of, any person who is not a party to the proceeding. The arbitrator will make any award in writing but need not provide a statement of reasons unless requested by a party. Upon a request by you or us, the arbitrator will provide a brief statement of the reasons for the award.

*Costs:* If we file the arbitration, we will pay the initial filing fee. If you file the arbitration, you will pay the initial filing fee, unless you seek and qualify for a fee waiver under the applicable rules of the arbitration administrator. We will reimburse you for the initial filing fee if you paid it and you prevail. If there is a hearing, we will pay any fees

of the arbitrator and arbitration administrator for the first day of that hearing. All other fees will be allocated in keeping with the rules of the arbitration administrator and applicable law. However, we will advance or reimburse filing fees and other fees if the arbitration administrator or arbitrator determines there is other good reason for requiring us to do so, or we determine there is good cause for doing so. Each party will bear the expense of that party's attorneys, experts, and witnesses, and other expenses, regardless of which party prevails, except that the arbitrator shall apply any applicable law in determining whether a party should recover any or all expenses from another party.

**No Consolidation or Joinder of Parties:** All parties to the arbitration must be individually named. Claims by persons other than individually named parties shall not be raised or determined. Notwithstanding anything else that may be in this arbitration provision or Agreement, no class action, private attorney general action or other representative action may be pursued in arbitration, nor may such action be pursued in court if any party has elected arbitration. Unless consented to by all parties to the arbitration, Claims of two or more persons may not be joined, consolidated or otherwise brought together in the same arbitration (unless those persons are applicants, co-applicants or authorized users on a single account and/or related accounts or parties to a single transaction or related transactions); this is so whether or not the Claims (or any interest in the Claims) may have been assigned.

**Enforcement, Finality, Appeals:** You or we may bring an action, including a summary or expedited motion, to compel arbitration of Claims subject to arbitration, or to stay the litigation of any Claims pending arbitration, in any court having jurisdiction. Such action may be brought at any time, even if any such Claims are part of a lawsuit, unless a trial has begun or a final judgment has been entered. Failure or forbearance to enforce this arbitration provision at any particular time, or in connection with any particular Claims, will not constitute a waiver of any rights to require arbitration at a later time or in connection with any other Claims. Any additional or different agreement between you and us regarding arbitration must be in writing. Within fifteen days after an award by the single arbitrator, any party may appeal the award by requesting in writing a new arbitration before a panel of three neutral arbitrators designated by the same arbitration administrator. The panel will consider all factual and legal issues anew, follow the same rules that apply to a proceeding using a single arbitrator, and make decisions based on the vote of the majority. Costs will be allocated in the same way they are allocated for arbitration before a single arbitrator. An award by a panel, or an award by a single arbitrator after fifteen days has passed, shall be final and binding on the parties, subject to judicial review that may be permitted under the FAA. An award in arbitration will be enforceable as provided by the FAA or other applicable law by any court having jurisdiction. An award in arbitration shall determine the rights and obligations between the named parties only, and only in respect of the Claims in arbitration, and shall not have any bearing on the rights and obligations of any other person, nor on the resolution of any other dispute or controversy.

**Severability, Survival:** This arbitration provision shall survive: (i) termination or changes in the Agreement, the account and the relationship between you and us concerning the account; (ii) the bankruptcy of any party; and (iii) any transfer or assignment of your account, or any amounts owed on your account, to any other person. If any portion of this arbitration provision is deemed invalid or unenforceable, the remaining portions shall nevertheless remain in force.

© 2014 Credit One Bank, N.A. All rights reserved.
Credit One® and Credit One Bank® are federally registered trademarks.          C50-00271 08/14          **D809 / M-110495**

ELECTRONICALLY FILED
Pulaski County Circuit Court
Larry Crane, Circuit/County Clerk
2016-Jan-25  14:30:03
60CV-15-5632
C06D06 : 6 Pages

In the Circuit Court of Pulaski County, Arkansas
Sixth Division

LVNV Funding, LLC                                                    Plaintiff

v.                              Case No. 60CV-15-5632

Deanne Scroggins Hooker                                         Defendant

## Answer

Defendant Deanne Scroggins Hooker, files this Answer to Plaintiff

LVNV Funding, LLC's Complaint.

### Admissions and Denials

1.      Deanne Scroggins Hooker lacks sufficient knowledge or

information to form a belief about the truth of the allegations in paragraph

1.

2.      Deanne Scroggins Hooker lacks sufficient knowledge or

information to form a belief about the truth of the allegations in paragraph

2.

3.      Deanne Scroggins Hooker admits the allegations in paragraph 3.

4.      Deanne Scroggins Hooker denies the allegations in paragraph 4.

5.      Deanne Scroggins Hooker denies the allegations in paragraph 5.

6.      Deanne Scroggins Hooker denies the allegations in paragraph 6.

7.      Deanne Scroggins Hooker denies the allegations in paragraph 7.

8.      Deanne Scroggins Hooker lacks sufficient knowledge or

information to form a belief about whether Plaintiff is the assignee of

Exhibit 2

CREDIT ONE BANK NA. Deanne Scroggins Hooker denies the remaining allegations of paragraph 8.

9.      Deanne Scroggins Hooker denies the Affidavit of Matt Summers and other exhibits attached to the Complaint are sufficient to establish the account sued on under Ark. Code Ann. § 16-45-104.

10.    Deanne Scroggins Hooker denies Plaintiff has the standing or capacity to sue her.

11.    Deanne Scroggins Hooker denies Plaintiff is entitled to a judgment against her in the sum of $589.99, together with post judgment interest, and all costs, or that Plaintiff is entitled to any relief against her.

### Affirmative Defenses

12.    Deanne Scroggins Hooker is not liable to Plaintiff because of fraud.

13.    Deanne Scroggins Hooker is not liable to Plaintiff because of illegality.

14.    Deanne Scroggins Hooker is not liable to Plaintiff because of set-off.

15.    Deanne Scroggins Hooker is not liable to Plaintiff because of statue of frauds.

16.    Deanne Scroggins Hooker is not liable to Plaintiff because it lacks standing to sue her.

2

17.   Deanne Scroggins Hooker is not liable to Plaintiff because it lacks the capacity to sue her.

18.   Deanne Scroggins Hooker is not liable to Plaintiff because the Affidavit of Matt Summers and other exhibits attached to the Complaint are not sufficient to establish the account sued on under Ark. Code Ann. § 16-45-104.

19.   Deanne Scroggins Hooker is not liable to Plaintiff because the Complaint fails to state facts upon which relief can be granted.

20.   Deanne Scroggins Hooker is not liable to Plaintiff because it cannot prove by evidence outside the Affidavit of Matt Summers and other exhibits to the Complaint the account in dispute under Ark. Code Ann. § 16-45-104.

21.   Deanne Scroggins Hooker is not liable to Plaintiff because its Complaint should be dismissed for failing to comply with Ark. R. Civ. P. 10(d).

22.   Deanne Scroggins Hooker reserves the right to amend her answer to include other affirmative defenses as discovery in this case progresses.

## Reservation of Rights to Assert Claims

23.   Deanne Scroggins Hooker reserves her rights to assert any counterclaim she may have against LVNV Funding LLC.

24.   Deanne Scroggins Hooker reserves her rights to assert any third-party claim against Credit One Bank, N.A. and others.

3

## Jury Demand

25.    Deanne Scroggins Hooker demands a jury trial.

## Prayer for Relief

Deanne Scroggins Hooker prays for the following relief:

1)    Render Judgment in favor of her, and Plaintiff takes nothing;

2)    Dismiss Plaintiff's Complaint with prejudice;

3)    Award Defendant her attorney's fees and costs for defending

against the Complaint as allowed by Ark. Code Ann. § 16-22-308;

and

4)    Award Defendant all other relief the Court deems appropriate.

Date: January 25, 2016.                    Respectfully submitted

/s/ Corey D. McGaha
Corey D. McGaha
Ark. Bar No. 2003047
Willliam T. Crowder
Ark. Bar No. 2003138
CROWDER MCGAHA, LLP
5507 Ranch Drive, Suite 202
Little Rock, AR 72223
Phone: (501) 205-4026
Fax: (501) 367-8208
cmcgaha@crowdermcgaha.com
wcrowder@crowdermcgaha.com

4

## Certificate of Service

I certify that on January 25, 2016, I served a copy of the foregoing in accordance with Ark. R. Civ. P. 5(e) via U.S. Mail to the following:

Donald C. Tippett
Jennifer A. Cook
GAMACHE & MYERS, P.C.
103 N. College #3
Fayetteville, AR 72701

<u>/s/ Corey D. McGaha</u>

5

STATE OF ARKANSAS    )
PUALSKI COUNTY        )

### Affidavit of Deanne Scroggin Hooker

 Before me, the undersigned notary, on this day personally appeared, Deanne Scroggin Hooker, the affiant, a person whose identity is known to me. After I administered an oath to affiant, affiant testified:

 1. "My name is Deanne Scroggin Hooker. I am competent to make this Affidavit. The facts stated in this Affidavit are within my personal knowledge and are true and correct.

 2. I am the named Defendant in the Complaint filed in the Circuit Court of Pulaski County, Arkansas, Case No. 60CV-15-5632.

 3. I have never applied for a CREDIT ONE BANK NA account.

 4. I have never had financial transactions with CREDIT ONE BANK NA.

 5. I have never used any credit from CREDIT ONE BANK NA.

 6. I have never promised to pay CREDIT ONE BANK NA any amount of money.

 7. I have never agreed to any balance with CREDIT ONE BANK NA.

 8. I do not know how LVNV FUNDING, LLC obtained the account that is the subject matter of this lawsuit.

 9. I do not owe LVNV FUNDING, LLC $589.99."

_Deanne Scroggin Hooker_
Deanne Scroggin Hooker

 SWORN TO and SUBSCRIBED before me by Deanne Scroggin Hooker on January 25, 2016.

_David M. Berry_
Notary Public in and for
the State of Arkansas



OFFICIAL SEAL
DAVID M. BERRY
NO. 12369895
PULASKI COUNTY
My Commission Expires 2-18-2019

In the Circuit Court of Pulaski County, Arkansas
Sixth Division

LVNV Funding, LLC                                                    Plaintiff

v.                              Case No. 60CV-15-5632

Deanne Scroggin Hooker                                           Defendant

## Defendant's Request for Production

Defendant Deanne Scroggin Hooker serves this request for produciton on Plaintiff LVNV Funding, LLC as authorized by Ark. R. Civ. P. 34(b). As required by Rule 34(b), Plaintiff must produce all requested documents, electronically stored information, or tangible things within within 30 days after service of this request, at Crowder McGaha, LLP, 5507 Ranch Drive, Suite 202, Little Rock, Arkansas 72223.

### Definitions

The following terms have the following meanings, unless the context requires otherwise:

1.  <u>Parties.</u> The term "plaintiff," or "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party, means the party and, when applicable, their agents, representatives, officers, directors, employees, partners, corporate parent, subsidiaries or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

2.  <u>Person.</u> The term "person" means any natural person, a business, a legal or governmental entity, or an association.

3.  <u>You & your.</u> The terms "you" and "your" mean LVNV Funding, LLC and its agents, representatives, attorneys, experts, and other persons acting or purporting to act on LVNV Funding, LLC's behalf.

4.  <u>Material.</u> The term "material" means all documents, electroncially stored information, and tangible things.

Exhibit 3

a.  <u>Document.</u> The term "document" includes writings, drawings, graphs, charts, photographs, phonorecords, other data cocompilations from which information can be obtained, translated if necessary, by Defendant through detection devices into reasonbly usable form, and electroncially stored information.

b.  <u>Electronically stored information.</u> The term "electronically stored information" means electronic information that is stored in a medium form which it can be retrieved and examined. In includes, but is not limited to, all electronic files that are electroncially stored.

   (1)  "Electronic file" includes, but is not limited to, the following: voicemail messages and files; email messages and files; text messages and files; deleted files; temporary files; system-history files; internet- or web-browser-generated information stored in textual, graphical, or audio format, including history files, caches, and cookies, computer activity logs, metadata.

   (2)  "Electronic information system" refers to a computer system or network that contains electronic files and electronic storage.

   (3)  "Electronic storage" refers to electronic files contained on magnetic, optical, or other storage media, such as hard drives, flash drives, DVDs, CDs, tapes, cartridges, floppy diskettes, smart cards, integrated-circuit cards, and SIM cards.

c.  <u>Tangible thing.</u> The term "tangible thing" means a physical object that is not a document or electronically stored information.

5.  <u>Communication.</u> The term "communication" means the transmittal of information in the form of facts, ideas, inquires, or otherwise.

6.  <u>Relating.</u> The term "relating" means concerning, referring, describing, evidencing, or constituting, either directly or indirectly.

7.  <u>Any.</u> The term "any" should be understood in either its most or its least inclusive sense as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

8.   <u>And & or.</u> The connectives "and" and "or" should be construed either conjunctively or disjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

9.   <u>Number.</u> The use of the singular form of any word includes the plural and vice versa.

### Instructions

1.   Respond to each request for production separately by listing the materials and by describing them as defined above. If the material is numbered or labeled for production, in each response provide both the information that identifies the material and the material's number or lable

2.   Produce documents and tangible things in the forms as they are kept in the ordinary course of business, or organize and number or label them to correspond with the categories in the discovery request.

3.   Produce electronically stored information in single-page searchable Adobe Tagged Image File Format (TIFF). For any electronically stored information produced:

   a.   Produce a discovery log that details the type of information, the source of the information, the discovery request to which the information corresponds, and the information's Bates number.

   b.   Write all of the electronically stored information to a flash drive.

4.   For electronically stored information, identify every source containing potentially responsive information that You are not searching.

5.   If objecting to a request for production, state the objection with particularity, providing specific grounds for the objection.

6.   For any materials that You assert are privileged, protected, or otherwise exempt from discovery, provide the following:

   a.   The specific grounds for the claim of privilege, protection, or other exemption.

b.   The type of material being withheld, and, if the material is electronically stored information, the file format of the material.

c.   The subject matter of the matierial.

d.   The date of the material.

e.   The name, job title, and address of the author of the material.

f.   The name, job title, and address of each addressee of the material.

g.   The name, job title, and address of each person who received, was copied on, or otherwise saw all, part, or a summary of the material.

h.   The name, job title, and address of the custodian of the material and the material's current location.

7.   For any materials that you claim no longer exist or cannot be located, provide all of the following:

a.   A statement identifying the material.

b.   A stateement of how and when the material ceased to exist or when it could no longer be located.

c.   The reasons for the material's nonexistence or loss.

d.   The identity, address, and job title of each person having knowledge about the nonexistence or loss of the material.

e.   The identity of any materials evidencing the nonexistence or loss of the material or any facts about the nonexistence or loss.

## Request for Production

1.   Produce all materials identified in your Answers to Deanne Scroggin Hooker's Interrogatories.

2.   Produce the application by Deanne Scroggin Hooker for the account at issue in your Complaint.

4

3.    Produce receipts of the charges referenced in your Complaint.

4.    Produce your file of the debt alleged in your Complaint.

5.    Produce the transaction history of the debt alleged in your Complaint. Note that the transaction history should reflect the purchases allegedly made by Deanne Scroggin Hooker, application of payments, the account balance remaining after acceptance, and application of each individual payment.

6.    Produce all materials relating to payments by Deanne Scroggin Hooker on the account at issue.

7.    Produce the sale contracts between you and all predecessors in interest relating to the alleged debt.

8.    Produce the entire file received by you from any predecessor in interest.

9.    Produce all materials any predecessor in interest sent to Deanne Scroggin Hooker relating to the alleged debt.

10.    Produce all assignment agreements permitting you to bring this claim, beginning with the first assignment form the original creditor, and every subsequent assignment agreement.

11.    Produce collection notes you obtained or created relating to the account at issue in your Complaint.

12.    Produce any other writings you obtained or created relating to the account at issue in your Complaint.

13.    Produce all materials you sent to Deanne Scroggin Hooker relating to the debt at issue in your Complaint.

14.    Produce all materials you received from Deanne Scroggin Hooker relating to the debt at issue your Complaint.

15.    Produce invoices sent by you to Deanne Scroggin Hooker relating to the debt at issue in your Complaint.

16.    Produce notices sent by you to Deanne Scroggin Hooker relating to the debt at issue in your Complaint.

17.   Produce billing statements sent to Deanne Scroggin Hooker relating to the debt at issue in your Complaint.

18.   Produce your complete file relating to Deanne Scroggin Hooker.

19.   Produce all notes, logs, memoranda, or computer entries, relating to this case, Deanne Scroggin Hooker, or the alleged debt which you seek to collect.

20.   Produce all communications (including emails) between you and the original creditor of the alleged debt, relating to this case, Deanne Scroggin Hooker, or the alleged debt.

21.   Produce all communications (including emails) between you and any assignor of the alleged debt, relating to this case, Deanne Scroggin Hooker, or the alleged debt you seek to collect.

22.   Produce all materials identified in, referred to, or used in answering Deanne Scroggin Hooker's Interrogatories.

23.   Produce all materials which you were asked to describe or identify in answering Deanne Scroggin Hooker's Interrogatories.

24.   Produce copies of all materials identified in, referred to, or used in drafting your Complaint.

25.   Produce all notices, including any default or right to cure notices, sent to Deanne Scroggin Hooker relating to the debt at issue.

26.   Produce working papers, notes, calculations, diagrams, photographs, exhibits, and other materials, including reports and factual observations, prepared or reviewed by any expert who will testify at trial.

27.   Produce all copies of all transcripts of testimony previously provided by any individual listed by you as an expert witness.

28.   Produce treatises, rules, regulations, guidelines, statutes, policies, procedures, and any other authoritative materials considered by any testifying expert in forming an opinion.

29.   Produce invoices, bills, and other billing materials for each expert you expect will testify at trial.

30.   Produce all photographs, videotapes, drawings, and other tangible things that pertain in any way to the subject matter of this civil action.

Date: January 25, 2016

Respectfully submitted,

Corey D. McGaha
Ark. Bar No. 2003047
William T. Crowder
Ark. Bar No. 2003138
CROWDER MCGAHA, LLP
5507 Ranch Drive, Suite 202
Little Rock, AR 72223
Phone: (501) 205-4026
Fax: (501) 367-8208
cmcgaha@crowdermcgaha.com
wcrowder@crowdermcgaha.com

## Certificate of Service

I certify that on January 25, 2016, I served a copy of the foregoing in accordance with Ark. R. Civ. P. 5(e) via U.S. Mail to the following:

Donald C. Tippett
Jennifer A. Cook
GAMACHE & MYERS, P.C.
103 N. College #3
Fayetteville, AR 72701

Corey D. McGaha

In the Circuit Court of Pulaski County, Arkansas
Sixth Division

LVNV Funding, LLC                                                    Plaintiff

v.                           Case No. 60CV-15-5632

Deanne Scroggin Hooker                                    Defendant

## Defendant's Interrogatories

Defendant Deanne Scroggin Hooker serves these interrogatories on Plaintiff LVNV Funding, LLC as authorized by Ark. R. Civ. P. 33(a). Plaintiff must serve an answer to each interrogatory separately and fully, in writing and under oath, within 30 days after service of these Interrogatories.

### Definitions

The following terms have the following meanings, unless the context requires otherwise:

1.   <u>Parties.</u> The term "plaintiff," or "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party, means the party and, when applicable, their agents, representatives, officers, directors, employees, partners, corporate parent, subsidiaries or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

2.   <u>Person.</u> The term "person" means any natural person, a business, a legal or governmental entity, or an association.

3.   <u>You & your.</u> The terms "you" and "your" mean LVNV Funding, LLC, and its agents, representatives, attorneys, experts, and other persons action or purporting to act on LVNV Funding, LLC's behalf.

4.   <u>Material.</u> The term "material" means all documents, electroncially stored information, and tangible things.

Exhibit 4

a.   <u>Document.</u> The term "document" includes writings, drawings, graphs, charts, photographs, phonorecords, other data cocompilations from which information can be obtained, translated if necessary, by Defendant through detection devices into reasonbly usable form, and electroncially stored information.

b.   <u>Electronically stored information.</u> The term "electronically stored information" means electronic information that is stored in a medium form which it can be retrieved and examined. In includes, but is not limited to, all electronic files that are electroncially stored.

(1)   "Electronic file" includes, but is not limited to, the following: voicemail messages and files; email messages and files; text messages and files; deleted files; temporary files; system-history files; internet- or web-browser-generated information stored in textual, graphical, or audio format, including history files, caches, and cookies, computer activity logs, metadata.

(2)   "Electronic information system" refers to a computer system or network that contains electronic files and electronic storage.

(3)   "Electronic storage" refers to electronic files contained on magnetic, optical, or other storage media, such as hard drives, flash drives, DVDs, CDs, tapes, cartridges, floppy diskettes, smart cards, integrated-circuit cards, and SIM cards.

c.   <u>Tangible thing.</u> The term "tangible thing" means a physical object that is not a document or electronically stored information.

5.   <u>Communication.</u> The term "communication" means the transmittal of information in the form of facts, ideas, inquires, or otherwise.

6.   <u>Relating.</u> The term "relating" means concerning, referring, describing, evidencing, or constituting, either directly or indirectly.

7.   <u>Any.</u> The term "any" should be understood in either its most or its least inclusive sense as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

2

8.    <u>And & or.</u> The connectives "and" and "or" should be construed either conjunctively or disjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

9.    <u>Number.</u> The use of the singular form of any word includes the plural and vice versa.

**Instructions**

1.    <u>Identifying a person.</u> When an Interrogatory asks you to "identify" a person, provide the information listed below, to the extent known, with respect to the person. Once a person has been identified in compliance with this paragraph, only the name of that person needs to be listed in response to later discoveyr requesting the identification of the person.

    a.    The person's full name;

    b.    Present or last known address;

    c.    Telephone number; and

    d.    The present or last known place of employment and job title when referring to a natural person.

2.    <u>Identifying a document.</u> When an interrogatory asks you to "identify" a document, provide the information listed below, to the extent known, with respect to the document. Once a document has been identified in compliance with this paragraph, onlyl the title or other abbreviated, clear identifier of the document needs to be listed in response to later discovery requesting the identification of the document.

    a.    The type of document;

    b.    The general subject matter of the document;

    c.    The date of the document;

    d.    The names and addresses of the authors and recipients of the document;

    e.    The location of the document;

3

     f.    The identity of the person who has possession or control of the document; and

     g.    Whether the document has been destroyed, and if so, (a) the date of its destruction, (b) the reason for its destruction, (c) the identity of the persons who destroyed it, and (d) any retention policy directing its destruction.

3.    <u>Identifying electronically stored information.</u> When an interrogatory asks you to "identify" electronically stored information, provide the information listed below, to the extent known, with respect to the information. Once electronically stored information has been identified in compliance with this paragraph, only the title or other abbreviated, clear identifier of the electronically stored information needs to be listed in response to later discovery requesting the identification of the electronically stored information.

     a.    The format of the electronically stored information;

     b.    The general subject matter of the electronically stored information;

     c.    The date of the electronically stored information;

     d.    The names and addresses of the authors and recipients of the electronically stored information;

     e.    The location of the electronically stored information;

     f.    The identity of the person who has possession or control of the electronically stored information; and

     g.    Whether the electronically stored information has been destroyed, and if so, document has been destroyed, and if so, (a) the date of its destruction, (b) the reason for its destruction, (c) the identity of the persons who destroyed it, and (d) any retention policy directing its destruction.

4.    <u>Identifying a tangible thing.</u> When an interrogatory asks you to "identify" a tangible thing, provide the information listed below, to the extent known, with respect to the tangible thing.

     a.    The type of tangible thing;

    b.    The general description of the tangible thing;

    c.    The date of creation of the tangible thing;

    d.    The creator and owner of the tangible thing;

    e.    The location of the tangible thing;

    f.    The identity of the person who has custody of the tangible thing; and

    g.    Whether the tangible thing has been destroyed, and if so, (a) the date of its destruction, (b) the reason for its destruction, (c) the existence and location of any physical remanants of its destruction, (d) the identity of the person who destroyed it, and (e) any retention policy directing its destruction.

5.    <u>Describing an act or transaction.</u> When an interrogatory asks you to "describe" an act or transaction, provide the information listed below, to the extent known, with respect to the act or transaction.

    a.    The date the act or transaction occurred;

    b.    The place where the act or transaction occurred;

    c.    The identity of each person participating in the act or transaction and on whose behalf the person was acting;

    d.    The nature and substance of all communications that occurred in connection with the act or transaction; and

    e.    The identity of all materials referring to or reflecting the act or transaction.

6.    <u>Specifying a date.</u> When an interrogatory asks you to "specify" a date, the the extent known, stat the exact day, month, and year or state the narrowest approximate time frame.

## Interrogatories

1.    Identify each person answering these interrogatories, supplying information, or assisting in any way with the preparation of the answers to these interrogatories.

2.   Identify every person with knowledge of relevant facts and summarize each person's knowledge and opinions.

3.   Identify all persons that have possession, custody, or control of materials relevant to this suit and the materials over which they have possession, custody, or control.

4.   Identify all expert witnesses you expect to call at the trial of this case.

5.   Identify copies of all credit applications or requests for credit at Credit One Bank, N.A., which were signed by Deanne Scroggin Hooker.

6.   On December 4, 2015, did LVNV Funding, LLC or its counsel possess any credit application signed by Deanne Scroggin Hooker, or any written contract signed by Deanne Scroggin Hooker?

7.   Identify all charge slips signed by Deanne Scroggin Hooker.

8.   Identify each monthly statement for the account on which you sued Deanne Scroggin Hooker.

9.   State all addresses to which the monthly statements for the account on which you sued Deanne Scroggin Hooker were sent, and as to each address, state the beginning and ending dates such address was used by Credit One Bank, N.A., to mail such monthly statements.

10.   For the account on which you sued Deanne Scroggin Hooker, state:

a)   the date Credit One Bank, N.A., opened the account;
b)   the date Credit One Bank, N.A., closed the account;
c)   the date of the last purchase on the account; and
d)   the date of the last payment on the account.

11.   Identify all late charges assessed to the account on which you sued Deanne Scroggin Hooker.

12.   Identify all entities which have owns the account upon which you sued Deanne Scroggin Hooker, and the amount paid by each entity to acquire the account.

13.   Identify a copy of all contracts and agreements between you and any entity identified in your answer to interrogatory 12 relating to the purchase of debts, the collection of debts, or transfers of funds between such entities.

14.   Identify all assignments or contracts that show you are the owner of the specific obligation or claim upon which you sue.

15.   Identify the entire chain of title from Credit One Bank, N.A. to LVNV Funding, LLC.

16.   Identify any contract of assignment between you and Credit One Bank, N.A.

17.   As to the claim, obligation, or account on which you sued Deanne Scroggin Hooker, state:

a)   The amount which you paid to acquire the claim, obligation, or account;
b)   The name and address of the entity from which you purchased the claim, obligation, or account;
c)   The date of such purchase;
d)   The manner of purchase;
e)   State whether the claim, obligation, or account, may be returned or refunded to the successor in interest, and under what circumstances; and
f)   Attach a copy of all agreements or contracts of assignment.

18.   Identify all materials and communications that relate to the contract sued upon or which relate to Deanne Scroggin Hooker, or which relate to any correspondence between you and any successor in title to this contract or any contract of assignment.

19.   Attach a copy of all business records of any entity or person which relate to the claim, obligation, or account, upon which you sue, including all paper or electronic records of:

a)   LVNV Funding, LLC;
b)   Credit One Bank, N.A.;
c)   Matt Summers; and
d)   Any other entity or person which has documents or records

20.   Attach a copy of the account history at Credit One Bank, N.A. for the Defendant.

21.   List all payments upon the account on which you sued Deanne Scroggin Hooker, and for each such payment, state:

a)   date;
b)   amount; and

7

c)   how the payment was applied to interest, principal, other charges, specifying same.

22.   Attach copies of all computer records and printouts which relate to this account, made by any entity and for each computer printout, state:

a)   Name and address of firm which made the record or printout, and
b)   Date on which the computer printout or record was created.

23.   List any and all advances, loans, sales, and charges made under the claim sued on, and for each detail the amount, the date, merchant, and to whom the check was payable, and who wrote said check, and who signed each charge slip or cash advance.

24.   State whether Credit One Bank, N.A., routinely records phone calls regarding consumer debts.

25.   State whether Deanne Scroggin Hooker was tape recorded by you or Credit One Bank, N.A., and if so, state the dates of such recordings, and who made the recordings. If you answer to this Interrogatory is in the affirmative, identify all such recordings and transcripts.

26.   Attach copies of all account progress logs and telephone logs relating to phone calls to or from Deanne Scroggin Hooker, including the telephone logs and account activity logs of you and Credit One Bank, N.A.

27.   If you allege that Deanne Scroggin Hooker made any admissions, state the date, time place and substance of any such admissions, and all witnesses to such admissions.

28.   Attach a copy of all documents, business records, logs, computer records in your possession, which relate in any way to Deanne Scroggin Hooker and the account upon which you sue.

29.   Attach a copy of all documents, business records, logs, computer records in the possession your possession which relate in any way to Deanne Scroggin Hooker or the account upon which you sued Deanne Scroggin Hooker.

30.   State the range of percentages of face value which you paid for the various kinds of defaulted consumer debt from January 1, 2015 through December 31, 2015.

31.    State the due diligence procedures, if any, by which you verify that the alleged debts you purchase are actual debts owing by consumers.

32.    State whether the debt in question was owned by intermediate assignees (that is, was the debt owned by entities other than you and Credit One Bank, N.A.)?

33.    State the due diligence procedures, if any, by which you verify that the alleged debts you purchase are actually owned by the entities which purport to sell such debts.

34.    State whether you have any recourse against any sellers of the debt involved in this case were it to turn out that the debt is not actually owing by Deanne Scroggin Hooker.   If so state what these procedures may be for recourse.

35.    State the exact nature of what you received when it purchased the claim at issue in this suit.

36.    Attach a copy of whatever you received as alleged evidence of the debt at issue.

37.    State whether you require that sellers of consumer debts who sell debts to you provide you with any of the following documents to at the time when you purchase the consumer debts:

a)    signature of the consumer on a credit application or request for credit;
b)    charge slips; and
c)    monthly statements for a credit card account.

If your answer is "No" explain why not.

38.    State the number of consumer credit accounts from January 1, 2015 through December 31, 2015, which you attempted to collect by litigation in suits filed by Gamache & Myers, P.C. (state number of lawsuits filed).

39.    Identify all manuals, documents and the like which state your procedures for dealing with assertions of theft of identity, mistaken identity, or non-liability by consumers who are being dunned or sued by you or your agents or attorneys.

40.    Identify all communications between you and another person relating to Deanne Scroggin Hooker.

9

41.   Identify all communications between you and Deanne Scroggin Hooker.

42.   Identify all materials known to you relating to Deanne Scroggin Hooker's account.

43.   Identify all materials you received about Deanne Scroggin Hooker's account before you began collection efforts relating to Deanne Scroggin Hooker's account.

44.   Identify all materials you received about Deanne Scroggin Hooker's account after you began collection efforts relating to Deanne Scroggin Hooker's account.

45.   Identify all persons other than Deanne Scroggin Hooker with whom you communicated about Deanne Scroggin Hooker's account, including consumer reporting agencies.

46.   If you reported Deanne Scroggin Hooker's account to any credit bureau, identify the credit bureau and the date(s) of each report.

47.   How did you locate Deanne Scroggin Hooker?

48.   Identify the person who approved the decision for to file the civil action against Deanne Scroggin Hooker in the Circuit Court of Pulaski County, Arkansas.

49.   Describe how you determined the amount of money you allege Deanne Scroggin Hooker owed in the Complaint filed in the Circuit Court of Pulaski County, Arkansas.

50.   Do you contend the Affidavit of Matt Summer complies with Ark. Code Ann. § 16-45-104? If your answer is in the affirmative, describe in detail the facts and legal contentions supporting your answer.

51.   Identify all information redacted from the compilation of documents attached to your Complaint.

52.   Identify all materials Matt Summers reviewed relating to the Credit Account prior to signing his Affidavit.

53.   Regarding the document entitled CREDIT ONE BANK CREDIT CARD STATEMENT attached to your Complaint:

- who created the document;

- how was the document created;
- why was the document created; and
- when was the document created.

54. Regarding the document consisting of the last seven pages attached to your Complaint,

- who created the document;
- how was the document created;
- why was the document created; and
- when was the document created.

Date: January 25, 2016

Respectfully submitted,

_Corey D. McGaha_ (signature)

Corey D. McGaha
Ark. Bar No. 2003047
William T. Crowder
Ark. Bar No. 2003138
CROWDER MCGAHA, LLP
5507 Ranch Drive, Suite 202
Little Rock, AR 72223
Phone: (501) 205-4026
Fax: (501) 367-8208
cmcgaha@crowdermcgaha.com
wcrowder@crowdermcgaha.com

## Certificate of Service

I hereby certify that on January 25, 2016, I served a copy of the foregoing document to the following via U.S. Mail.

Donald C. Tippett
Jennifer A. Cook
GAMACHE & MYERS, P.C.
103 N. College #3
Fayetteville, AR 72701

_Corey M. McGaha_ (signature)

Corey D. McGaha

11

ELECTRONICALLY FILED
Pulaski County Circuit Court
Larry Crane, Circuit/County Clerk
2016-Mar-29 11:33:15
60CV-15-5632
C06D06 : 1 Page

#15700799

## IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
## CIVIL DIVISION

LVNV FUNDING, LLC A LIMITED LIABILITY COMPANY

        Plaintiff(s)

                               Case No. 60CV-15-5632
                               Division No. 6

DEANNE HOOKER

        Defendant(s)

### <u>MOTION TO DISMISS WITHOUT PREJUDICE</u>

Comes now the Plaintiff, by and through its attorney, and respectfully requests dismissal of

this action without prejudice pursuant to Rule 41 of the Arkansas Rules of Civil Procedure.


                  GAMACHE & MYERS, P.C.


                  BY:    /S/DONALD C. TIPPETT
                            DONALD C. TIPPETT, Ark Bar # 91156
                            CRAIG A. OVERSTREET, Ark Bar #2016014
                            Attorneys for Plaintiff
                            103B North College
                            Fayetteville AR 72701
                            (866) 651-2022
                            FAX (866) 651-2024


### <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have on this March 29, 2016 served the Attorney for Defendant(s)
COREY D McGAHA, CROWDER & MCGAHA, LLP, , 5507 RANCH DRIVE SUITE 202,
LITTLE ROCK AR 72223 in the foregoing matter with a copy of this Pleading by depositing in the
United States mail a copy of the same in a properly addressed envelope with adequate postage
thereon.


                            /S/DONALD C. TIPPETT

Exhibit 5

ELECTRONICALLY FILED
Pulaski County Circuit Court
Larry Crane, Circuit/County Clerk
2016-Mar-30 15:22:18
60CV-15-5632
C06D06 : 1 Page

#15700799

## IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
## CIVIL DIVISION

LVNV FUNDING, LLC A LIMITED LIABILITY COMPANY

        Plaintiff(s)

                                Case No. 60CV-15-5632
                                Division No. 6

DEANNE HOOKER

        Defendant(s)

## ORDER OF DISMISSAL WITHOUT PREJUDICE

Came on this 30ᵗ day of March , 20 16 , Plaintiff's Motion to Dismiss

Without Prejudice, in the above-referenced matter pursuant to Rule 41 of the Arkansas Rules of

Civil Procedure.

Upon being duly advised of the premises herein, the Court nonsuits and dismisses this

matter without prejudice as to further action by the Plaintiff

IT IS SO ORDERED.

_____
CIRCUIT JUDGE

Prepared by:

/S/DONALD C. TIPPETT_____
Donald C. Tippett, Arkansas Bar # 91156
Craig A. Overstreet, Arkansas Bar #2016014
Gamache & Myers, P.C.
Attorneys for Plaintiff
103 North College #3
Fayetteville, AR 72701
(866) 651-2022
Fax (866) 651-2024

Exhibit 6

# Verification

State of Arkansas    )
County of Pulaski    )

Under 28 U.S.C. § 1746, Plaintiff Deanne Scroggin Hooker, having first been duly sworn and upon oath, verifies, certifies, and declares as follows:

1.    I am the Plaintiff in this civil action.
2.    I have read the foregoing Complaint prepared by my attorneys.
3.    I believe that all of the facts contained in the Complaint are true, to the best of my knowledge, information, and belief formed after a reasonable inquiry.
4.    I believe that this Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
5.    I believe that this Complaint is not interposed for any improper purpose, such as to harass any named Defendant, cause unnecessary delay to any named Defendant, or create a needless increase in the cost of litigation to any named Defendant.
6.    I have filed this Complaint in good faith and solely for the purposes set forth in it.
7.    Each and every exhibit I provided to my attorneys attached to the Complaint is a true and correct copy of the original.
8.    Except for any clearly indicated redactions made by my attorneys, I have not altered, changed, modified, or fabricated these exhibits.

I declare under penalty of perjury that the foregoing is true and correct.

This 4th day of October, 2016.        _Deanne Scroggin- Hooker_
                                        Deanne Scroggin Hooker